**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

            **vs.**                                                        **1:09-CR-00127  (NAM)**

**JEFFREY O'DELL,**

                  **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| Andrew T. Baxter | Richard D. Belliss, Esq. |
| United States Attorney | Assistant U.S. Attorney |
| Northern District of New York | |
| 445 Broadway | |
| Albany, New York  12207 | |
| | |
| Alexander Bunin | Gene V. Primono, Esq. |
| Federal Public Defender | Assistant Federal Public Defender |
| 39 North Pearl Street | |
| 5th Floor | |
| Albany, New York 12207 | |
| *Attorney for Defendant* | |

**Norman A. Mordue, Chief U.S. District Judge:**

### MEMORANDUM DECISION AND ORDER

## I.      INTRODUCTION

Defendant Jeffrey O'Dell is charged in a one-count indictment with violating 18 U.S.C. §

2250(a).  To wit, the government charged defendant, an individual required to register under the

Sex Offender Registration and Notification Act ("SORNA"), with knowingly traveling in

interstate commerce from the State of New York to the State of Georgia, and knowingly failing to

register as a sex offender in the State of Georgia and knowingly failing to update his registration

in the State of New York.

Presently before the Court is defendant's motion to dismiss the indictment on the following grounds: (1) SORNA is not applicable to defendant because New York and Georgia have not yet implemented the law; (2) to punish defendant for a law that did not yet apply to him would violate the *Ex Post Facto* Clause of the United States Constitution; (3) to punish defendant for violating a law with which he was unable to comply would violate the Due Process Clause of the United States Constitution; (4) the criminal provisions of SORNA (18 U.S.C. § 2290) and the registration requirements of SORNA (42 U.S.C. § 16913) violate the Commerce Clause; (5) the registration requirements of SORNA violate the Tenth Amendment; and (6) SORNA violates the non-delegation doctrine. (Dkt. No. 9)  The government opposes defendant's motion. (Dkt. No. 10).

## II.   FACTS[1]

On December 5, 1996, defendant was convicted of Criminal Sexual Conduct in the Third Degree in violation of South Carolina Code, § 16-3-654.[2]  On December 5, 1996, defendant was committed to the South Carolina State Department of Corrections for a term of 5 years with the sentence to be suspended upon the service of 10 months with probation for 3 years.[3]  On May 6,

---

[1] The facts recited herein, unless otherwise noted, are undisputed.  The facts are taken from the exhibits annexed to the government's opposition papers and from the affidavit of Neil Sullivan, a Criminal Investigator Deputy United States Marshal.

[2] Section 16-3-654 provides:

(1) A person is guilty of criminal sexual conduct in the third degree if the actor engages in sexual battery with the victim and if any one or more of the following circumstances are proven:
(a) The actor uses force or coercion to accomplish the sexual battery in the absence of aggravating circumstances.
(b) The actor knows or has reason to know that the victim is mentally defective, mentally incapacitated, or physically helpless and aggravated force or aggravated coercion was not used to accomplish sexual battery.

[3] The record does not indicate how long defendant was confined.

2

1997, defendant completed a New Sex Offender Registry Information Form for the State of South

Carolina. Defendant acknowledged that he read the Form which provided, in part:

> I am providing this information in accordance with Section 23-3-450 of the South
> Carolina State Code of Laws which requires all individuals convicted of criminal
> offenses set forth in section 23-3-400 to register with the Sheriff's Office. I
> understand that I am required to re-register annually for life from the date below.

Under New York Law, defendant was required to register as a Sex Offender. On May 10,

2002, defendant registered as a Level 3 sex offender by completing and filing a New York State

Sex Offender Registration Form. Defendant acknowledged that he read the form and understood

his duty to register. The duties, as listed on the form, included notifying the Division of Criminal

Justice Services of any change of address and verifying a home address once a year. Additionally,

a Level 3 offender was required to verify his home address (in person) with local law enforcement

every 90 days. Defendant listed his address as Saratoga County Jail, 6010 Country Farm Road,

Ballston Spa, New York, 12020. On July 25, 2008, defendant completed a NYS Sex Offender

Change of Address Form and listed his former address as Saratoga County Jail and his new

address as 86 Van Dam Street, Saratoga Springs, New York.

On September 2, 2008, the Saratoga Springs Police Department conducted an address

verification of defendant. Investigator Glen E. Vidnansky prepared an Incident Report stating

that a landlord at defendant's apartment building advised that defendant was evicted from the

premises on August 22, 2008. On September 4, 2008, a warrant was issued for defendant's arrest

for failure to update/register as a sex offender.

On January 9, 2009, the U.S. Marshals Service received information from a Special Agent

of the Social Security Administration. The agent advised that on January 2, 2009, plaintiff had

appeared at a Social Security Office in Savannah, Georgia requesting that his social security

3

benefits be reinstated.  Defendant advised the Social Security representatives that he arrived in Savannah on December 31, 2008 and that he resided at 60 W. Montgomery, Savannah, Georgia. On January 12, 2009, Deputy U.S. Marshall Sullivan contacted the Georgia Bureau of Investigation Sex Offender Registry and the Chatham County Sheriff's Department and was advised that defendant never registered as a sex offender in the State of Georgia.

The indictment charges defendant with failing to register as a sex offender in the State of Georgia and failing to update his registration in the State of New York between July 2008 and February 6, 2009.

## III.   LEGISLATIVE BACKGROUND

Title I of The Adam Walsh Child Protection and Safety Act ("Walsh Act") is comprised of the Sex Offender Registration and Notification Act ("SORNA").  Pub. L. No. 109-248, §§ 1-155, 120 Stat. 587, 590-611 (2006), codified at 42 U.S.C. §§ 16901-16991.  SORNA was enacted in July 2006 to "protect the public from sex offenders and offenders against children by establishing a comprehensive national system for the registration of sex offenders".  42 U.S.C. § 16901. SORNA established registry requirements for sex offenders and provides, in pertinent part:

(a) In general

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register--

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

42 U.S.C. § 16913.

Subsection (d) of 42 U.S.C. § 16913 vested the Attorney General with, "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section". 42 U.S.C.§ 16913(d). The Attorney General was further directed to develop software to enable jurisdictions to establish and operate uniform sex offender registries. 42 U.S.C. § 16923. Each jurisdiction was directed to implement SORNA before the later of July 27, 2009 or one year after the software was made available. *See* 42 U.S.C. § 16924.

On February 28, 2007, the Attorney General enacted an Interim Rule which applied the requirements of SORNA to, "all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act". 28 C.F.R § 72.3.

SORNA also created criminal penalties for individuals who failed to register. The criminal provisions of SORNA were codified at 18 U.S.C. § 2250 and provide, in pertinent part:

(a) In general. Whoever

5

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act; shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

## IV.   DISCUSSION

Based upon the above statutory language, the court now examines defendant's arguments for dismissal.

### A.   SORNA's Applicability to Defendant

Defendant argues that SORNA is not applicable because New York and Georgia have not yet implemented the law. Defendant claims that the Attorney General has not yet issued a regulation declaring that SORNA applies to those convicted before the Act is implemented in a particular state. Defendant further claims that New York and Georgia have no system in place to carry out SORNA's registration and notification requirements and therefore, defendant cannot be subject to SORNA's constraints. The government contends that under a plain reading of the statute, defendant was clearly a person required to register under SORNA. Further, the government argues that defendant was able to comply with SORNA in both New York and Georgia since both states have sex offender statutes.

"SORNA's language makes clear that sex offenders have a general obligation to register in their jurisdiction. There is no mention anywhere in SORNA that the registration obligation

does not become effective until the state implements the additional registration requirements of SORNA". *U.S. v. Contreras*, 2008 WL 5272491, at *6 (W.D. Tex. 2008) (internal citations omitted). Compliance with the registration requirements of SORNA is possible in states that have yet to implement SORNA by registering through the state's sex offender registry. *See U.S. v. Van Buren*, 2008 WL 3414012, at *6 (N.D.N.Y. 2008) (internal citations omitted). In accordance with the relevant state statutes, a convicted sex offender could appear at the relevant law enforcement agency and submit the required information to fulfill his duties under SORNA and avoid criminal action. *See U.S. v. Fuller*, 2008 WL 2437869, at *2 (N.D.N.Y. 2008) (holding that the defendant presented no evidence that he was impeded from appearing at the relevant law enforcement agency to submit the required information to fulfill his duties under SORNA).

Several courts in this district have rejected the same argument that defendant attempts to advance in this regard. Specifically, courts have held that, "the fact that states have not yet met their SORNA obligations is irrelevant to the obligations of a sex offender to comply with SORNA". *U.S. v. Romeo*, 2009 WL 140422, at *3 (N.D.N.Y. 2009); *U.S. v. Lamere*, 2008 WL 5244125, at *2 (N.D.N.Y. 2008) (citing *U.S. v. Hester*, 2008 WL 351677, at *2 (N.D.N.Y. 2008)) (holding that whether or not the defendant knew he was in violation of SORNA was irrelevant because New York and Florida had sex offender registries and it was not necessary for the defendant to know precisely which statute he was violating in order to be held liable under the law); *Van Buren*, 2008 WL 3414012, at *6 (holding that whether mandated by New York, North Carolina or SORNA, registration is not optional); *U.S. v. Hall*, 577 F.Supp.2d 610, 614 (N.D.N.Y. 2008) (holding that even though New York and Virginia had not implemented SORNA, the defendant had a duty under federal law to maintain his sex offender registration with the states in

which he resided).  Contrary to defendant's arguments, the Attorney General adopted an interim regulation, effective February 28, 2007, which provided that SORNA applies to sex offenders whose conviction predates the enactment of SORNA, regardless of whether a jurisdiction has implemented SORNA's requirements.  *Hall*, 577 F.Supp.2d at 615.

In the case at hand, defendant concedes that New York and Georgia have sex offender registries.  Therefore, New York and Georgia both have mechanisms under which defendant could have appeared and submitted the required information to fulfill his duties under SORNA. Applying the majority view, the Court finds that the fact that New York and Georgia have yet to update their registries and procedures to conform with SORNA has no bearing on defendant's obligation to register as a sex offender.  *See Fuller*, 2008 WL 2437869, at *3.  Certainly, defendant was aware of the registration requirements as he completed one Sex Offender Registration Form in South Carolina, a Sex Offender Registration Form in New York and one New York State Sex Offender Change of Address Form.  Defendant has not established that he was impeded from registering in either state.  Therefore, the Court finds that SORNA applies to defendant and  he may be subject to criminal penalties under 18 U.S.C. § 2250(a).


**B.    *Ex Post Facto* Clause**

Defendant claims that punishing him for a law that was not yet applicable to him violates the *Ex Post Facto* Clause.  The government contends that SORNA became applicable to defendant on the day it was enacted, July 27, 2006, and defendant traveled between Georgia and New York after that date.  Therefore, the government argues there is no *ex post facto* issue.

The constitutional protection against *ex post facto* laws prohibits the punishment of individuals for acts that were legal when performed.  *Hall*, 577 F.Supp.2d at 615 (citing *Collins v. Youngblood*, 497 U.S. 37, 42 (1990)).  To violate the Clause, a law "must be retrospective, that is, it must apply to events occurring before its enactment" and "must disadvantage the offender affected by it".  *U.S. v. Lawrance*, 548 F.3d 1329, 1332 (10th Cir. 2008) (internal citations omitted) (holding that the defendant's *ex post facto* argument failed because the defendant traveled in interstate commerce after July 2006 and failed to register pursuant to the requirements of SORNA).

The Court notes that this argument has been raised several times by other convicted sex offenders in this district and across the country and has continually been rejected.  The courts in this district have held that prosecuting a sex offender under § 2250(a) is not retrospective as SORNA does not punish the individual for previously being convicted of a sex crime.  *See Romeo,* 2009 WL 140422, at *3; *see also Lamere*, 2008 WL 5244125, at *2 (citing *U.S. v May*, 535 F.3d 912, 919-20 (8th Cir. 2008)); *see Fuller*, 2008 WL 2437869, at *3 (holding that since SORNA applied to the defendant when he traveled to New York State, it did not have a retroactive effect); *see also Hall*, 577 F.Supp.2d at 615 (holding that the indictment accused the defendant of engaging in conduct that was already illegal prior to the defendant's actions and therefore, the *ex post facto* challenge was rejected); *see also Van Buren*, 2008 WL 3414012, at *7.

In this case, the indictment accuses defendant of engaging in illegal conduct, to wit, traveling in interstate commerce and failing to update his registration, between July 2008 and February 2009.  This Court adopts the majority view and finds that because defendant is charged

with violating § 2250(a) for conduct that occurred after SORNA was enacted, there is no *ex post facto* violation.

**C.      Due Process Clause**

Defendant argues that no apparatus existed through which an offender could comply with SORNA.  Thus, defendant contends that criminalizing defendant for the failure to do something that was impossible to do violates the Due Process Clause. The government contends that it was not impossible for defendant to comply with the registration requirements of New York and Georgia.

Due process does not require that a defendant have actual knowledge of a duty to register where the facts demonstrate "proof of probability" that he had knowledge.  *U.S. v. Fuller*, 2008 WL 5600709, at *5 (N.D.N.Y. 2008) (citing *Lambert v. California*, 355 U.S. 225, 229-30 (1957)). Again, district courts within this district have rejected this argument by sex offenders.  *Hall*, 577 F.Supp.2d at 616 (holding that the defendant, "incorrectly contends that compliance with SORNA is impossible because of a state's failure to implement the statute's requirements" - the defendant could have fulfilled his obligation under SORNA by providing the Virginia and New York registries with the required information); *see also Fuller*, 2008 WL 2437869, at *3 (holding that New York's failure to implement SORNA did not impede the defendant from providing state officials with the required information); *see also Fuller*, 2008 WL 5600709, at *5 (holding that it is enough that the defendant had constructive knowledge of an affirmative duty to register).

In this case, the record establishes that defendant completed and filed a Sex Offender Registry Information Form in South Carolina and a NYS Sex Offender Form.  Further, defendant completed a New York State Sex Offender Change of Address Form.  Defendant's prior

experience with the South Carolina and New York statutes demonstrates that he had knowledge of his duty to register.   Moreover, defendant does not allege that he was impeded from providing the necessary information to officials in New York or Georgia.  Consequently, had defendant complied with his registration obligations, he would not have violated SORNA.  *See Lamere*, 2008 WL 5244125, at *3.  Accordingly, defendant's due process rights were not violated.

**D.      Commerce Clause**

Defendant argues that § 2250 and § 16913 are invalid under the Commerce Clause. Defendant contends that the criminal provision and registration requirements do not fall into any of the broad categories of activity that Congress may regulate under its commerce power. Therefore, as Congress lacked the authority to enact § 2250 and § 16913, the indictment should be dismissed.

Article I of the Constitution vests Congress with the power to regulate commerce with foreign nations, several states and with the Indian tribes.  *See* U.S. Const., Art. 1.  In *U.S. v. Lopez*, 514 U.S. 549, 558-59 (1995), the Supreme Court articulated three broad categories of activity that Congress may regulate under its commerce power:  (1) Congress may regulate the use of channels of interstate commerce; (2) Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce.  Factors used to determine whether or not a regulated activity has a substantial effect on interstate commerce include: (1) whether the statute regulates activity that is economic in nature; (2) whether the

11

statute includes a jurisdictional element; (3) whether there are congressional findings concerning the effect of the regulated activity upon interstate commerce; and (4) the strength of the nexus between the regulated activity and the substantial effect upon interstate commerce.  *U.S. v. Morrison*, 529 U.S. 598, 610-12 (2000).

### 1.       18 U.S.C. § 2250

Defendant argues that § 2250 does not fall into any of the three broad categories of activity that Congress may regulate under its commerce power.[4]  Defendant's argument lacks merit.  Applying *Lopez* to SORNA, courts have held that Congress may regulate "persons or things in interstate commerce, even though the threat may come only from intrastate activities".  *Hall*, 577 F.Supp.2d at 619 (citing *Lopez*, 514 U.S. at 558). When a sex offender travels from one state to another, he is an instrumentality of interstate commerce.  *U.S. v. Ambert*, 2009 WL 564577, *8 (11th Cir. 2009); *see also Contreras*, 2008 WL 5272491, at *4 (holding that § 2250(a) is valid under the Commerce Clause because it regulates persons in interstate commerce).

Circuit courts and district courts have continuously rejected this argument by sex offenders and have held that § 2250 is constitutional under the Commerce Clause.  *Ambert*, 2009 WL 564677, at *8 (holding that the use of the channels and instrumentalities of interstate commerce is necessarily part of the commission of the targeted offense under § 2250); *U.S. v. May*, 535 F.3d 912, 922 (8th Cir. 2008) (holding that SORNA derives its authority from the first and second prongs of *Lopez* ); *Romeo*, 2009 WL 140422, at *4 (citing *May* and holding that SORNA contains a sufficient nexus to interstate commerce ); *Lamere*, 2008 WL 5244125, at *3-4

---

[4] In support of this argument, defendant cites to a single case, *U.S. v. Powers*, 544 F.Supp.2d 1331 (M.D. Fla. 2008).  However, *Powers* represents the minority view and has been rejected by several courts in this district and other districts.  *See Romeo*, 2009 WL 140422, at *4.

(citing *May* and holding that a SORNA satisfies the first two prongs of *Lopez*); *Fuller*, 2008 WL 5600709, at *4 (holding that there is a substantial nexus between interstate travel and failure to register); *Van Buren*, 2008 WL 3414012, at *11 (finding that, "75 federal courts have addressed the constitutionality of SORNA, and a majority of these cases, all but two, have addressed Congress' authority to enact the statute under the Commerce Clause"); *Hall*, 577 F.Supp. 2d at 619 (holding that Congress may safeguard against conduct that is wholly intrastate so long as the federal statute extends only to individuals who travel in interstate commerce).

This Court adopts the majority view and finds that §2250(a) is valid under the Commerce Clause as it satisfies the *Lopez* test and contains a sufficient nexus to interstate commerce.

### 2.    42 U.S.C. § 16913

Defendant argues that § 16913 requires every sex offender to register, regardless of whether the offender traveled across state lines.  As such, defendant claims that § 16913 is unconstitutional as Congress does not have the power to impose registration requirements on individual citizens convicted of purely intrastate offenses.  The government contends that the constitutionality of § 16913 should be assessed in connection with § 2250(a) as it functions as an element of the statute.

In support of this argument, defendant cites to a decision in this district.  In *U.S. v. Hall*, 577 F.Supp.2d 610 (N.D.N.Y. 2008), the defendant challenged the constitutionality of § 16913 and argued that he may not be convicted under § 2250(a) because the duty to register as a sex offender pursuant to SORNA is a required element of the statute and SORNA is an invalid use of Congress' authority under the Commerce Clause. *Hall*, 577 F.Supp.2d at 619.  The court distinguished the jurisdictional elements of § 2250(a) and § 16913 and noted that § 2250(a)

13

required sex offenders to travel in interstate commerce before being held criminally liable. *Id.* In contrast, the court noted that § 16913 conferred a duty upon all sex offenders, regardless of whether they traveled in interstate commerce, to register or update their sex offender registration within three days of any change of name, residence, employment or student status. *Id.* at 620. The court reasoned that the jurisdictional element of § 2250(a) did not remove a sex offender's duty under § 16913 to update his registration. *Hall*, 577 F.Supp.2d at 620. Applying the *Lopez* test, the court held that § 16913 could not satisfy the first or second prongs of the test, specifically, the court held that § 16913 neither regulated the use of channels of interstate commerce nor the instrumentalities or persons in interstate commerce. *Id.* With regard to the third prong, the court held that: (1) § 16913 did not regulate economic activity; (2) § 16913 did not contain a jurisdictional element; (3) the legislative history of § 16913 was devoid of congressional findings concerning the effect of the sex offender registration upon interstate commerce; and (4) any effect of continually registering sex offenders upon interstate commerce was too attenuated to be consider substantial. *Hall*, 577 F.Supp.2d at 621. Thus, the court held that § 16913 was not a valid exercise of the Commerce Clause.

Despite the ruling in *Hall*, the majority of courts in this district have addressed the same argument by convicted sex offenders and have concluded that § 16913 and § 2250(a) are interrelated components of SORNA and must be read together, not in isolation. *Romeo*, 2009 WL 140422, at *4-5 (the Court adopted the "majority view" and held that § 16913 and § 2250(a) must be read together); *Fuller*, 2008 WL 5600709, at *5 (considering both statutes together, the Court held that SORNA's registration requirements and penalty provision were valid attempts to regulate "persons" in interstate commerce); *Van Buren*, 2008 WL 3414012, at *12 (holding that §

14

16913 and § 2250(a) were interrelated such that a facial challenge to one part of SORNA cannot be resolved without resort to the totality of the statute and the weight of authority compelled the court to reject defendant's challenge).

### a.   Necessary and Proper Clause/Spending Clause

The government argues that even if the Court assesses the constitutionality of § 16913 alone, § 16913 is a valid use of Congress' power under the Necessary and Proper Clause and the Spending Clause.

It has long been recognized that Congress has the ability to make all Laws which shall be necessary and proper for the accomplishment of its commerce clause power. *See* U.S. Const., Art. I. The law must be deemed a rational and appropriate means to further Congress' regulation of interstate commerce. *Ambert*, 2009 WL 564677, at *3 (citing *U.S. v. Darby*, 312 U.S. 100, 121 (1941)); *see also McCullough v. Maryland*, 17 U.S. 316 (1819) (Chief Justice Marshall concluding that, "[l]et the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional"). Congress may regulate intrastate activity so long as the means employed by Congress are "reasonably adapted" to the attainment of a legitimate end under the commerce power. *Ambert*, 2009 WL 564677, at * 9 (citing *Darby*, 312 U.S. at 121).

In opposition, defendant relies upon the holding in *U.S. v. Waybright*, 561 F.Supp.2d 1154 (D.Mont. 2008). In *Waybright*, the government did not argue that § 16913 was valid under the Commerce Clause rather, the government relied upon the Necessary and Proper Clause. *Waybright,* 561 F.Supp.2d at 1164. The court rejected the government's argument that § 16913

was a "means to and end". *Id.* at 1166. The court held that § 16913 was not an essential part of a larger regulatory scheme, nor was it intended to fill in gaps in an otherwise valid use of Congress' power. *Id.* at 1167. The court reasoned that the primary purpose of SORNA was, "to establish a comprehensive national system for the registration for sex offenders" and not merely a "means to creating a federal crime for sex offenders who travel in interstate commerce and fail to register". *Id.* The court also rejected the government's Spending Clause argument holding that § 16913 is directed at individuals and had Congress intended § 16913 to be directed to the states, it would have commanded each jurisdiction to require sex offenders to register. *Waybright*, 561 F.Supp.2d at 1168.

Although not cited by defendant, in *U.S. v. Guzman*, 582 F.Supp.2d 305, 314 (N.D.N.Y. 2008), Judge Hurd reiterated the holding in *Hall* and concluded that § 16913 failed under the *Lopez* analysis. The court dismissed the government's argument regarding the Spending Clause but addressed the alternative argument that § 16913 was a proper exercise of Congress' power under the Necessary and Proper Clause. *Guzman*, 582 F.Supp.2d at 309. The court rejected the government's argument and held that:

> [t]he stated purpose of SORNA is to create comprehensive and uniform sex offender registration requirements. See 42 U.S.C. § 16901. Additionally, the notion that Congress's general regulatory scheme would be undercut without a national sex offender registration requirement is inconsistent with the jurisdictional element of § 2250(a) and the Government's argument that Congress has the power to regulate the intrastate activity of sex offenders. Under the Government's reasoning, Congress could go as far as to criminalize sex offenders' failure to register, regardless of whether they traveled in interstate commerce. Rather than do so, however, Congress enacted § 2250(a) and § 16913 in an effort to bolster the constitutionality of SORNA and circumvent the ruling in *Lopez*. Therefore, § 16913 is not a reasonably adapted means to achieve a constitutional objective and the Necessary and Proper Clause argument is rejected.

*Id.* at 314.

16

The holdings in *Waybright* and *Guzman* has been rejected by sister courts in this district and other districts around the country. *Lemere*, 2008 WL 5244125, at *3 (holding that SORNA's requirement that all sex offenders register is unenforceable until a sex offender crosses state line, at which point the failure to abide by one's federal duty bears federal consequences); *see also U.S. v. Dean*, 2009 WL 596547, at *13 (M.D.Ala. 2009) (holding that SORNA must be viewed as a whole because the federal government gains criminal jurisdiction only when a person required to register under SORNA travels in interstate commerce); *U.S. v. Pendleton*, 2009 WL 320546, at *7 (D.Del. 2009) (holding that the decisions in *Guzman* and *Hall* were unpersuasive); *U.S. v. Hardeman*, 2009 WL 188035, at *6 (N.D. Cal. 2009); *Contreras*, 2008 WL 5272491, at *4 (holding that §16913 does not violate the Commerce Clause since it is a necessary part of congressional efforts to monitor sex offenders who travel interstate); *U.S. v. Thomas*, 534 F.Supp.2d 912, 921 (N.D. Iowa 2008) (holding that the Necessary and Proper Clause was an appropriate and reasonably adapted means to achieving the goals of § 2250(a) to monitor sex offenders who travel interstate).

More recently, the Court of Appeals in the Eighth Circuit and the Eleventh Circuit addressed the Necessary and Proper Clause in the context of SORNA. In *U.S. v. Howell*, 2009 WL 66068, at *3 (8th Cir. 2009), the Eighth Circuit analyzed § 16913 under the Commerce Clause and noted that, "[s]everal district courts have decided Commerce Clause challenges" and the "vast majority of them have found § 16913 constitutional". *Howell*, 2009 WL 66068, at *3, n. 3. The court found the decisions in *Hall* and *Guzman* unpersuasive reasoning that *Hall* failed to analyze § 16913 under the Necessary and Proper Clause and stated *Guzman* was contrary to the court's holding that SORNA's intent was to further interstate tracking of sex offenders. *Id.* The court

17

analyzed the Necessary and Proper Clause and specifically, whether or not SORNA was furthering a legitimate end under the Commerce Clause. *Id.* at *5. The court noted that under § 2250(a), Congress limited the enforcement of the registration requirement to only those sex offenders who were either convicted of a federal sex offense or who moved in interstate commerce. *Id.* at *5. Therefore, a wholly intrastate offender would never be reached by federal enforcement power. *Howell*, 2009 WL 66068, at *5. The *Howell* court rejected the reasoning of *Waybright* and held that the language, statutory scheme and legislative history demonstrated that Congress intended to focus on the interstate movement of sex offenders. *Id.* at *6. The court concluded:

> [a] narrow discussion which only analyzes § 16913 under the three categories of *Lopez* casts doubt on the constitutionality of § 16913 (internal citation omitted). On its face, § 16913 does not have a jurisdictional "hook" to fit under the first two prongs of *Lopez*, and there is little evidence in this record to show intrastate sex offender registration substantially affects interstate commerce (internal citation omitted). However, an analysis of § 16913 under the broad authority granted to Congress through both the Commerce Clause and the enabling Necessary and Proper Clause reveals the statute is constitutionally authorized.

*Id.* at *4.

Therefore, the court held that § 16913 was constitutional under Congress' authority to use necessary and proper means to further its Commerce Clause power because it "is a necessary part of a more general regulation of interstate commerce". *Id.* at *6.

In *U.S. v. Ambert*, the Eleventh Circuit agreed with the holding in *Howell*. *Ambert*, 2009 WL 564577, at *9. The court stated that, "SORNA was designed to create an interstate system to counteract the danger posed by sex offenders who slip through the cracks or exploit a weak state registration system by traveling or moving to another state without registering". *Id.* at *9. The language of § 16913 focused on the movement of sex offenders across state borders and only

contains a federal enforcement provision against individuals who travel in interstate or foreign commerce and fail to register.  *Id.* at *10.  Therefore, the court held that, "Section 16913 was adapted to the attainment of a legitimate end under the commerce clause. The requirement that sex offenders register under § 16193 is necessary to track those offenders who move from jurisdiction to jurisdiction".  *Id.* at *10.

In *Romeo*, the most recent decision in this district to discuss SORNA, the court adopted the majority view in this district and the holding of *Howell*.  *Romeo*, 2009 WL 140422, at*4-5.  The court concluded that § 16913 found support in the Necessary and Proper Clause and noted, "[t]he registration and updating requirements of § 16913 are necessary to make § 2250(a) - a regulation of interstate commerce - effective".  *Id.* (internal citation omitted).

The Second Circuit has not yet addressed SORNA's constitutionality.  This Court adopts the majority view of the courts in this district and other districts and the holdings of *Ambert* and *Howell* and concludes that  § 16913 and § 2250(a) are interrelated components of a statutory scheme and must be analyzed together.  As stated by Judge Sharpe in *Lemere*, "there is no criminal penalty unless there is failure to register and conversely, failure to register cannot be enforced without a criminal penalty . . . § 2250(a) lacks all meaning without reference to § 16913 and § 16913 lacks all effect without reference to § 2250(a)".  *See Lemere*, 2008 WL 5244125, at *4 (citing *U.S. v. Crum*, 2008 WL 4542408 (W.D. Wash. 2008).  Moreover, the Court finds that the Necessary and Proper Clause provides further support for § 16913 as a reasonable means to accomplish legitimate ends.  Specifically, Congressional efforts to monitor sex offenders in interstate travel.

With regard to the Spending Clause and SORNA, the Court notes that the issue has not yet been addressed by any Circuit Court.  However, courts in this district have rejected the argument. *See U.S. v. Hall*, 588 F.Supp.2d 326, 328-29 (N.D.N.Y. 2008).

The Court adopts the majority view and finds that § 16913 does not exceed Congress' power under the Commerce Clause.

**E.      Tenth Amendment**

Defendant alleges that SORNA's registration requirements are an unconstitutional encroachment of federal power on state sovereignty in violation of the Tenth Amendment.  The government contends that defendant has failed to establish an encroachment of federal power upon state sovereignty.

The Tenth Amendment states that, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people".  *Fuller*, 2008 WL 5600709, at * (citing U.S. Const. amend. X).  Defendant's argument has been rejected by courts in this district.  *Romeo*, 2009 WL 140422, at *5 (holding that the defendant was not able to show that SORNA compelled New York or California to make any changes to their state sex offender registries); *Hall*, 577 F.Supp.2d at 617 (holding that the defendant could not show that New York or Virginia had made changes to their state sex offender registries in response to SORNA); *Lamere*, 2008 WL 5244125, at *4 (holding that the defendant was not able to show that SORNA compelled New York and Washington to make any changes in their registries).

In this case, defendant was required to register and update his registration under New York law.  Defendant has not established that SORNA compelled New York or Georgia to make changes to their registries.  Therefore, defendant's Tenth Amendment challenge must fail.

**F.      Non-Delegation Doctrine**

Defendant argues that SORNA violates the non-delegation doctrine as Congress cannot delegate its legislative authority to the Attorney General.  Congress has the sole authority to legislate and is not permitted to abdicate or to transfer to others the essential legislative functions with which it is vested.  U.S. Const., Art. I, §§ 1,8; *see also Schecter Poultry Corp. v. U.S.*, 295 U.S. 495, 529 (1935).  However, "[t]he non-delegation doctrine does not keep Congress from obtaining the assistance of its coordinate branches; it merely requires Congress to provide clear guidance and delineate the boundaries of delegated authority".  *Waybright*, 561 F.Supp.2d at 1170-71.  "When § 16913 is read as a whole, it is clear that the statute only authorizes the Attorney General to promulgate regulations in a limited number of circumstances".  *See Van Buren*, 2008 WL 3414012, at *15 (citing *Waybright*, 561 F.Supp.2d at 1171).  The Attorney General's authority under § 16913(d) extends only to "those currently unregistered offenders literally unable to comply with (b) because of the age of their convictions. . ."  *Fuller*, 2008 WL 5600709, at *6 (internal citations omitted).

Defendant's argument has consistently been rejected by the courts in this district.  *See Romeo*, 2009 WL 140422, at *5; *Lamere*, 2008 WL 5244125, at *4; *Van Buren*, 2008 WL 3414012, at *15; *Fuller*, 2008 WL 2437869, at *6 (holding that since the delegated authority is very limited in scope, SORNA does not violate the non-delegation doctrine); *Hall*, 577 F.Supp.2d at 618.  Moreover, the Eleventh Circuit recently held:

21

We are satisfied that Congress has provided the Attorney General with 'intelligible principles' in the Sex Offender Registration and Notification Act.  Congress has undeniably provided the Attorney General with a policy framework in § 16901 to guide his exercise of discretion under § 16913(d); and it has made a series of legislative judgments in §§ 16911, 16913, 16914 and 2250 that constrict the Attorney General's discretion to a narrow and defined category.

*Ambert*, 2009 WL 564677, at *12.

Accordingly, the Court adopts the majority view and finds that SORNA does not violate the non-delegation doctrine.

## V.    CONCLUSION

For the foregoing reasons it is hereby

**ORDERED** that defendant's motion (Dkt. No. 9) to dismiss the indictment is DENIED in its entirety.

**IT IS SO ORDERED.**

Date:   May 13, 2009

_____
Norman A. Mordue
Chief United States District Court Judge

22